# EXHIBIT A

**SCARPONE & VARGO LLC**
  James Scarpone, Esq. (ID# 234141966)
  John Nance, Esq. (ID# 23802003)
50 Park Place, Suite 1003
Newark, NJ 07102
tel: (973) 623-4101
fax: (973) 623-4181
jscarpone@scarponevargo.com
jnance@scarponevargo.com

| | |
|---|---|
| NBJC HOLDINGS, LLC f/k/a FIRST CONNECTICUT HOLDING GROUP LLC IV, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION—ESSEX COUNTY |
| Plaintiff, | Docket No. ESX-L-8315-21 |
| | Civil Action |
| v. | |
| CONTINENTAL CASUALTY COMPANY, DANIEL SHEPRO, SHEPRO & BLAKE LLC, and CHICAGO TITLE INSURANCE COMPANY, | **SUMMONS** |
| Defendants. | |

**FROM:** **The State of New Jersey**

**TO:** **Continental Casualty Company**

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information

Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

__/s/ Michelle M. Smith____
MICHELLE M. SMITH
Clerk of the Superior Court

DATED:  November 5, 2021

Name of Defendant to Be Served:   CONTINENTAL CASUALTY COMPANY

Address of Defendant to Be Served: c/o New Jersey Department of Banking and Insurance
Office of Regulatory Affairs
20 West State Street
PO Box 325
Attention: Debra Mullen, Admin. Assistant

**SCARPONE & VARGO LLC**
James Scarpone, Esq. (ID# 234141966)
John Nance, Esq. (ID# 23802003)
50 Park Place, Suite 1003
Newark, NJ 07102
tel: (973) 623-4101
fax: (973) 623-4181
jscarpone@scarponevargo.com
jnance@scarponevargo.com

| | |
|---|---|
| NBJC HOLDINGS, LLC f/k/a FIRST CONNECTICUT HOLDING GROUP LLC IV, <br><br>    Plaintiff, <br><br> v. <br><br> CONTINENTAL CASUALTY COMPANY, DANIEL SHEPRO, SHEPRO & BLAKE LLC, and CHICAGO TITLE INSURANCE COMPANY, <br><br>    Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION—ESSEX COUNTY <br><br> Docket No. ESX-L-_____-21 <br><br> Civil Action <br><br> **COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiff, NBJC HOLDINGS LLC f/k/a FIRST CONNECTICUT HOLDING

COMPANY LLC IV ("NBJC"), by and for its Complaint against Defendants CONTINENTAL

CASUALTY COMPANY ("CCC"), DANIEL SHEPRO ("Shepro"), SHEPRO & BLAKE LLC,

and CHICAGO TITLE INSURANCE COMPANY ("CT"), alleges as follows:

## INTRODUCTION

1.      In this action, NBJC seeks a declaration that the professional liability insurance

policy issued by CCC to the law firm known as Shepro & Blake for the policy period November

7, 2006 through November 7, 2007 provides coverage for claims asserted by NBJC against

Defendant Daniel Shepro in litigation currently pending before the Superior Court of New Jersey captioned as *Peter Mocco, et al. v. James Licata, et al.*, Consolidated Docket No. ESX-L-7709-13 (the "Underlying Litigation"). Alternatively, NBJC seeks a declaration that under principles annunciated by the New Jersey Supreme Court in *Merchants Indem. Corp. v. Eggleston*, 37 *N.J.* 114 (1962) and *Griggs v. Bertram*, 88 *N.J.* 347 (1982), CCC is estopped from denying coverage for the NBJC claims.

## PARTIES

2.      Plaintiff, NBJC HOLDINGS LLC, is a New Jersey limited liability company with a principal place of business at 345 Tenth Street, Jersey City, NJ 07302. NBJC was formerly known as First Connecticut Holding Group LLC IV ("FCHG IV") and is so-named in the pleadings filed in the Underlying Litigation. FCHG IV at all relevant times was (and, as NBJC, continues to be) the owner of a portfolio of rental real estate consisting of 175 units.

3.      Defendant CONTINENTAL CASUALTY COMPANY ("CCC") is a property and casualty insurance company that, among other products, markets professional liability policies to attorneys. Upon information and belief, CCC is domiciled in the State of Illinois and has a principal place of business located at 151 N. Franklin St., Chicago, Illinois 60606.

4.      Defendant DANIEL SHEPRO ("Shepro") is an attorney-at-law of the State of Connecticut and at all relevant times was a member of the law firm known as Shepro & Blake.

5.      Defendant SHEPRO & BLAKE LLC (collectively with Shepro, the "Shepro Parties") is a Connecticut limited liability company with a principal place of business located at 2051 Main Street, Stratford, Connecticut 06615.

6.     Defendant CHICAGO TITLE INSURANCE COMPANY ("CT") is a Florida

corporation with a principal place of business located at 601 Riverside Avenue, Jacksonville,

Florida 32204.

7.     The Shepro Parties and CT are named as Defendants in this action pursuant to

*N.J. Ct. R.* 4:28-1(a) insofar as: (i) they are subject to service of process and (ii) they have

sufficient interests in the outcome of the action to necessitate their joinder as parties.

## BACKGROUND FACTS

### A.     The Underlying Claims Against Shepro

8.     The Underlying Litigation involves five consolidated cases, numerous parties, and

numerous claims and types of claims that have been pending before this Court since 1998. The

underlying litigation, notwithstanding its current 2013 docket number, actually commenced in

1999 when the original Mocco complaint against the Licatas was filed. The central issue became

a dispute as to ownership of a valuable portfolio of real estate assets and real estate holding

companies. Among the disputed holding companies was the entity known as FCHG IV, which

owns 175 units of rental housing and commercial space in Hudson County.

9.     At the time of the transactions that gave rise to the claims against Shepro, the

ownership dispute between the Moccos and the Licatas (including Shepro's then-client, Cynthia

Licata) was still pending before this Court, albeit stayed by the so-called "automatic stay" in Mr.

Licata's bankruptcy case.

10.    On September 21, 2001 (prior to the Licata bankruptcy filing), the Hon. Kenneth

S. Levy, J.S.C., then-presiding over the Underlying Litigation and seeking to preserve the status

3

quo, entered an Order prohibiting transfer or encumbrance of any of the disputed properties or

holding companies. The Order specifically provided:

> Pending further order of this Court, or should the Bankruptcy
> Court assume jurisdiction of this matter, the order of the
> Bankruptcy Court, no party or any affiliate of a party shall transfer,
> lien, or encumber any interest of any of the Holding Entity LLCs
> or any properties owned in the name of any such Holding LLCs.

11.     FCHG IV was one of the Holding Entity LLCs referenced in the Order. The

Order prohibited transfer or encumbrance of both the entity's membership interests and the real

property owned in the entity's name.

12.     Cynthia Licata was a party to the Underlying Litigation at the time the Order was

entered and at all relevant times thereafter.

13.     In May 2006, Shepro, acting as attorney-at-law and attorney-in-fact for Mrs.

Licata, executed deeds and mortgages which transferred title to and created $38 million in liens

upon the real property owned by FCHG IV. From this transaction, Mrs. Licata received

immediate cash payments totaling more than $2 million.

14.     The transfer and encumbrance of the FCHG IV real estate was a direct violation

of the September 21, 2001 Order. The parties to the May 2006 closing did not obtain or seek

relief from the Order before consummating the transactions.

15.     Shepro does not and cannot deny that prior to transferring title and encumbering

the real estate, he knew of Judge Levy's order.

16.     On March 7, 2007, FCHG IV and parties affiliated with it (collectively, the

"Mocco Parties") filed a First Amended and Supplemented Complaint in the Underlying

Litigation. With the amendment, the Mocco Parties, among other things, sought (i) to clear title

4

to the FCHG IV properties whose titles were clouded by the May 2006 closing, and (ii) to assert

claims for damages against the parties to the closing, including Shepro.

17.    The First Amended and Supplemented Complaint, filed in the pending matters on

March 7, 2007; served on Shepro; and ultimately reported to "CNA" ("CCC") on June 20, 2007,

contained the following factual allegations which explain the factual and procedural context in

which the September 21, 2001 Order was issued.  These allegations also set forth the factual

basis for the Mocco claims against Shepro:

B.    The September 21, 2001 Order in this Action

56.    On September 1, 2001 after this litigation had already been
pending for approximately two and one-half years, but before the
Licata Parties filed their bankruptcy cases, Defendant, Pieter de
Jong delivered to Peter Mocco certificates of membership interest
previously executed by him pursuant to a power of attorney from
the Licatas reflecting the fact that 100% of all the membership
interests in the Holding Entities (FCHG II, III, IV, X, XI and XIII)
had been issued to Lorraine Mocco.  In addition, Mr. de Jong
delivered to Mr. Mocco all of the essential structural documents
for these entities, including the registers reflecting ownership and
transfers of the membership interests.

57.    Prior to September 1, 2001 the Licata Parties, supported by
Mr. de Jong, had insisted that all the Holding Entities were in fact
owned by the Licatas and that there was no agreement to reconvey
them to the Moccos.

58.    On September 1, 2001, however, Mr. de Jong also
produced the original executed agreement to reconvey the
properties to Mocco (this agreement is sometimes referred to as the
"3-page agreement" or the "nominee agreement") and a fully
executed copy of the May 1, 1997 "Escrow Agreement" which Mr.
de Jong said he had recently discovered while cleaning some old
files.  It was these agreements that were the central issue in the trial
before Judge Brown in Vermont.

59.    The Licata Parties at that point took the position that
reconveyance of the holding entities to the Moccos was precluded
by the terms of the confirmation order in the Moccos' prior
bankruptcy case and requested permission to present that issue to

5

the New Jersey Bankruptcy Court, which had confirmed the Mocco reorganization plan.

60.    On September 21, 2001, this Court entered an Order, which among other things, granted the Licata Parties a limited period of time to file an application with the United States Bankruptcy Court in furtherance of their assertions that reconveyance of the holding entities was prohibited by the Bankruptcy Code. In that same Order, without disturbing the completed transfers of the legal title to the beneficial owners, but in order to preserve the status quo while the application was made to the bankruptcy court, this Court also directed as follows:

> Pending further order of this Court, or should the Bankruptcy Court assume jurisdiction of this matter, the order of the Bankruptcy Court, no party or any affiliate of a party shall transfer, lien, or encumber any interest in any of the Holding Entity LLCs or any properties owned in the name of any such Holding LLCs.

C.    Licata's Move To Bankruptcy Court

61.    The Licata Parties did not file their motion in the Mocco bankruptcy cases within the 28 days provided for in the September 21, 2001 Order. The proffered reason for this delay was that Podvey Sachs, the second law firm to represent Licata in these cases, was moving to be relieved as counsel and Licata needed time to find new counsel.

62.    Although the Licata Parties never succeeded in retaining another law firm to appear on their behalf in these consolidated cases, they did retain the firm of Bisceglie & Friedman of Newark to represent them in an application to the bankruptcy court which sought the same relief that had been sought in this Court on the issue of who owned the holding entities.

63.    By Order dated March 19, 2002, the Honorable Raymond T. Lyons, United States Bankruptcy Judge for the District of New Jersey, refused to reopen the Moccos' bankruptcy cases and denied the Licata motion.

64.    After another month and a half of waiting for the Licata Parties to retain new counsel for this litigation, on May 7, 2002 the Moccos moved in this Court for the entry of a judgment against the Licata Parties on a variety of procedural and substantive grounds.

That motion was originally scheduled for argument on May 31, 2002, but was adjourned to accommodate prospective new counsel with whom the Moccos were told Mr. Licata was then having discussions.

65.     While this Court and counsel were waiting for Mr. Licata to find and retain new counsel to represent the Licata Parties in this litigation, and while the motion to dismiss his claims and affirmative defenses was pending, Mr. Licata in fact retained counsel in Florida to file a personal Chapter 11 petition for him in the United States Bankruptcy Court for the Middle District of Florida (Tampa) on June 27, 2002. He also retained counsel to file a Chapter 11 for First Connecticut Consulting Group in the District of Connecticut on June 28, 2002.

66.     The Moccos and other parties in the consolidated cases only learned of these filings a few days later while in the midst of depositions under the supervision of this Court's Special Fiscal Agent.

67.     The Licata filing in Florida (accompanied by a flurry of applications for emergent relief against the Moccos and their counsel, all of which were later withdrawn) was an utterly inappropriate choice of venue and the Florida Bankruptcy Court responded very promptly with an August 30, 2002 order transferring the Licata personal Chapter 11 case to the bankruptcy court in Bridgeport, Connecticut where the FCCG case was already pending.

68.     Thereafter, in September of 2002 Licata caused numerous other Chapter 11 petitions to be filed by various LLCs in which he claimed an interest. Eventually, he filed over 25 bankruptcy petitions.

* * *

102.    On or about May 26, 2006, or shortly thereafter, the defendants, SWJ, Podell, Mournes, Schreiber, Proskauer Rose, Shepro and James and Cynthia Licata, caused to be prepared, executed and recorded, a deed purporting to be issued on behalf of First Connecticut Holding Group, LLC IV, transferring all of that entity's interest in certain real property located in the Township of

7

North Bergen and the city of Jersey City, New Jersey. The deed was executed on behalf of FCHG IV by:

> "Cynthia Licata, Member Duly Authorized by her Attorney-In-Fact Daniel Shepro, Esq."

\* \* \*

104.  Any attempt to transfer an interest in FCHG IV's real estate is a violation of this Court's Order dated September 21, 2001. James and Cynthia Licata were both parties to the proceedings in which that Order was entered, and were both bound by its terms. SWJ, Podell and Mournes all acquired whatever interest they are asserting on behalf of SWJ, with full knowledge of the existence of that Order and its restrictions on transfer or encumbrance of the so-called "Holding Entities", and Schreiber and Proskauer Rose were fully aware of that Order as well. Furthermore, Shepro, as "Attorney-In-Fact" for Cynthia Licata acted with full knowledge of the September 21, 2001 Order, and is bound by it to the same extent that Cynthia Licata is.

**B.    Facts Giving Rise to the Dispute with CCC**

18.    On or about November 2, 2006, CCC (on stationary identifying itself as CNA Insurance) issued Lawyers Professional Liability Policy No. 287078473 to the law firm then-known as Shepro & Blake, 2051 Main Street, Stratford, Connecticut (the "Policy"). The Policy is a claims made and reported policy issued for the period November 7, 2006 through November 7, 2007. (A true and correct copy of the Policy, as provided to the undersigned counsel by CCC, is attached hereto as Exhibit A).

19.    On June 7, 2007, Shepro submitted a claim for defense and indemnification under the Policy to an agent for CCC. The agent forwarded Shepro's notice to CCC, who received it on June 20, 2007. (A true and correct copy of Shepro's June 7, 2007 letter, as provided by CCC, is attached hereto as Exhibit B).

20.    By letter dated June 20, 2007, CCC (again, on CNA stationary) acknowledged receipt of the claim and advised Shepro & Blake that it was assigning "a claims professional"

8

who would contact them. (A true and correct copy of CCC's June 20, 2007 letter, as provided by CCC, is attached hereto as Exhibit C).

21.     Following the June 2007 letter, CCC assigned the defense of Shepro and his firm to Milber, Makris, Plousadis & Seiden LLP, an insurance defense law firm that, upon information and belief, is regularly and frequently employed by CCC to represent its insureds.

22.     As reflected in documents provided to the Mocco Parties pursuant to this Court's Order of September 20, 2021, the next communication between CCC and Shepro on the subject of coverage occurred seven years later, by way of letter from CCC to Shepro dated August 27, 2014. (A true and correct copy of CCC's August 27, 2014 letter, as provided by CCC, is attached hereto as Exhibit D). In the 2014 letter, CCC, for the first time, asserts that fraud and punitive damages are excluded from coverage, but no mention is made of claims based on violations of court orders. No response by Shepro has been produced.

23.     The 2014 letter was written on the eve of the so-called "Ownership Trial." Several years following the conclusion of that trial (and an affirmance by the Appellate Division), on August 15, 2019, CCC wrote again to Shepro. In this 2019 letter, CCC for the first time explains with any level of detail their coverage position. Again, there is no discussion of claims based on violations of court orders. (A true and correct copy of CCC's August 15, 2019 letter is attached hereto as Exhibit E).

24.     In the 2019 letter, CCC for the first time asserts that it is reserving "all of its rights" under the fraud and punitive damages exclusions of the Policy. Also, in the 2019 letter, CCC for the first time advises its insured that because "coverage may be unavailable for most, if not all, of the amounts claimed," he "may wish to consult with independent counsel (at his) own

9

expense." At no time has CCC offered any explanation as to their twelve-year delay before giving Shepro the notice and advice reflected in their 2019 letter.

25.     The 2019 letter was written on the eve of mediation between the Mocco, Shepro, and Chicago Title Parties. Notwithstanding that the mediation was requested by the counsel retained by CCC to represent Shepro, CCC took the position at the mediation that the Mocco Parties' claims against Shepro were excluded from coverage under the fraud exclusion and refused to offer anything in settlement of the claims other than some unspecified nominal amount.

26.     From June 2007 through to the present, CCC has controlled the defense of the Mocco claims against Shepro. At no time since the Mocco claims were first asserted has CCC tendered control of the defense of these claims to Shepro and a law firm of Shepro's choosing.

27.     By retaining control of the defense of these claims, CCC and its chosen defense counsel have put themselves in a conflict between CCC's interest in excluding the Mocco claims from coverage and Shepro's interest in proving that he acted in good faith albeit in error when he expressed opinions as to the import and effect of certain orders issued by the Connecticut Bankruptcy Court.

28.     CCC has produced no written or other evidence of consent by Shepro to CCC's control of the defense of the Mocco claims. Nor has it produced any evidence to show that Shepro was advised of the conflict and afforded an opportunity to make or even participate in the selection of defense counsel.

29.     The heart of the Mocco claims against Shepro is the undisputed, abundantly-documented fact, that on May 25-26, 2006, Shepro, acting as both attorney-at-law and attorney-in-fact for Cynthia Licata, consummated a transaction that clearly and unquestionably violated

the Court's September 21, 2001 Order, which was intended to preserve the status quo pending this Courts' resolution of the ownership dispute.

30.     Shepro has contended that he acted with a reasonable belief that, because of certain orders entered in the Connecticut bankruptcy case of James Licata, the September 21, 2001 Order was no longer binding. If so, he was negligent and the CCC policy would, on its face, cover the Mocco claims.

31.     If, on the other hand, Shepro knowingly and intentionally violated the Court's order as part of a scheme or plan to defraud Mocco and the Lenders, the policy exclusion for fraud or intentional wrongful acts could apply.

32.     For purposes of the Underlying Litigation, resolution of the intent issue is not essential. The Court clearly and obviously can enforce its own orders and award compensation to those who were damaged by a violation of its orders, whether the violation is a result of malice or negligence. Determination of intent versus negligence then becomes the subject of a declaratory judgment action involving the insured, the claimants, and the insurer.

33.     However, when the insurer controls the defense without a promptly-negotiated and executed Reservation of Rights Agreement, the resulting conflict of interest on the part of both the insurer and defense counsel requires, under New Jersey law, that the insurer be estopped from asserting the exclusion.

34.     Here, CCC, through its chosen defense counsel, has controlled the defense of Shepro for fourteen years. Since the Appellate Division decision on the ownership issue, CCC has taken the position that there is no coverage based on the intentional tort exclusion. CCC's position is a blatant contradiction of their insured's position that he acted in a good faith belief that the order was no longer in effect or was superseded by Bankruptcy Court orders. CCC

11

advances their position while continuing to control the defense of their insured. CCC is, in fact, asserting an argument that will expose their insured to great personal liability, including punitive damages.

## COUNT ONE
### Declaratory Judgment

35. NBJC repeats the allegations set forth in Paragraphs 1 through 33.

36. An actual and justiciable controversy exists between the parties regarding CCC's obligation to indemnify the Shepro Parties for the claims asserted against him by NBJC.

37. CCC's failure to obtain its insured's agreement to their long-delayed assertion of a reservation of rights combined with their control of the defense for fourteen years have created confusion, uncertainty, and insecurity which the Declaratory Judgment Act is intended to remedy. *See N.J.S.A.* 2A:16-51.

38. A judicial determination is necessary and appropriate at this time in order that the parties' rights and obligations under the Policy may be ascertained.

WHEREFORE, Plaintiff NBJC HOLDINGS LLC demands judgment against CCC as follows:

   (a) For a declaration that CCC is obligated to indemnify Shepro for any judgment entered against him on the claims asserted by NBJC in the Underlying Litigation because the NBJC claims are covered under the Policy;

   (b) For a declaration that CCC is estopped from denying coverage to Shepro in the Underlying Litigation;

12

(c)    For costs, including attorneys' fees pursuant to *N.J. Ct. R.* 4:42-9(a)(6);

and

(d)    For any such other and further relief the Court may deem just and

equitable.

## DESIGNATION OF TRIAL COUNSEL

James A. Scarpone, Esq. is designated as trial counsel for Plaintiff.

## RULE 4:5-1 CERTIFICATION

I, James A. Scarpone. Esq., certify pursuant to *N.J. Ct. R.* 4:5-1 that, to the best of my

knowledge, information, and belief, the matter in controversy is not the subject of any other

action or arbitration proceeding now pending or contemplated and that no other parties should be

joined in this action pursuant to *N.J. Ct. R.* 4:28.

SCARPONE & VARGO LLC
*Attorneys for Plaintiff NBJC Holdings LLC*

    */s/ James A. Scarpone*
JAMES A. SCARPONE

DATED:  November 4, 2021

13





CONTINENTAL CASUALTY COMPANY
CNA PLAZA
CHICAGO, ILLINOIS 60685

LAWYERS PROFESSIONAL LIABILITY POLICY

*Words and phrases that appear in bold are defined in the Definitions section of this Policy.*

**THIS IS A CLAIMS MADE AND REPORTED POLICY. IT APPLIES ONLY TO THOSE CLAIMS THAT ARE BOTH FIRST MADE AGAINST THE INSURED AND REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD. PLEASE REVIEW THIS POLICY CAREFULLY AND DISCUSS THIS COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

I.    INSURING AGREEMENT

    A    Coverage

        The **Company** agrees to pay on behalf of the **Insured** all sums in excess of the deductible that the **Insured** shall become legally obligated to pay as **damages** and **claim expenses** because of a **claim** that is both first made against the **Insured** and reported in writing to the **Company** during the **policy period** by reason of an act or omission in the performance of **legal services** by the **Insured** or by any person for whom the **Insured** is legally liable, provided that

        1    the **Insured** did not give notice to a **prior insurer** of such **claim** or a **related claim**;

        2    the **Insured** did not give notice to a **prior insurer** of any such act or omission or **related act or omission**;

        3    prior to

            a    the inception date of the first policy issued by the **Company** or any subsidiary or affiliate of the **Company**, if continuously renewed; or,

            b    the date the **Insured** first became a member or employee of the Named **Insured** or predecessor firm, whichever is later, no **Insured** had a basis to believe that any such act or omission, or **related act or omission**, might reasonably be expected to be the basis of a **claim**;

        4    there is no other policy, whether primary, contributory, excess, contingent or otherwise, which provides insurance to any **Insured** for the **claim** based on or arising out of an act or omission in the performance of **legal services** by such **Insured** or by any person for whom the **Insured** is legally liable while affiliated with a firm other than the **Named Insured**.

    B    Defense

        The **Company** shall have the right and duty to defend in the **Insured's** name and on the **Insured's** behalf a **claim** covered by this Policy even if any of the allegations of the **claim** are groundless, false or fraudulent. The **Company** shall have the right to appoint counsel and to make such investigation and defense of a **claim** as is deemed necessary by the **Company**. If a **claim** shall be subject to arbitration or mediation, the **Company** shall be entitled to exercise all of the **Insured's** rights in the choice of arbitrators or mediators and in the conduct of an arbitration or mediation proceeding.

    C.    Settlement

        The **Company** shall not settle a **claim** without the written consent of the **Named Insured**. If the **Named Insured** refuses to consent to a settlement or compromise recommended by the **Company** and acceptable to the claimant, then the **Company's** limit of liability under this Policy shall be reduced to the amount for which the **claim** could have been settled plus all **claim expenses** incurred up to the time the **Company** made its recommendation, which amount shall not exceed the remainder of the limit of liability specified in Section II.A

    D    Exhaustion of limits

        The **Company** is not obligated to investigate, defend, pay or settle, or continue to investigate, defend, pay or settle a **claim** after the applicable limit of the **Company's** liability has been exhausted by payment

G-118011-A(c)
Ed.7/01

Shepro_LN104923_000085



of **damages** or **claim expenses** or by any combination thereof or after the **Company** has deposited the remaining available limits of liability into a court of competent jurisdiction. In such case, **the Company** shall have the right to withdraw from the further investigation, defense, payment or settlement of such claim by tendering control of said investigation, defense or settlement of the **claim** to the **Insured**.

II.    LIMITS OF LIABILITY AND DEDUCTIBLE

A.    Limit of Liability - each claim

Subject to paragraph B. below, the limit of liability of the **Company** for **damages** and **claim expenses** for each **claim** first made against the **Insured** and reported to the **Company** during the **policy period** shall not exceed the amount stated in the Declarations for each **claim**.

B.    Limit of liability - in the aggregate

The limit of liability of the **Company** for **damages** and **claim expenses** for all **claims** first made against the **Insured** and reported to the **Company** during the **policy period** shall not exceed the amount stated in the Declarations as the aggregate.

C.    Deductible

The deductible amount stated in the Declarations is the total amount of the **Insured's** liability for all **claims** and applies to the payment of **damages** and **claim expenses** for **claims** first made and reported to the **Company** in writing during the **policy period**. The deductible shall be paid by the **Named Insured**, or upon the **Named Insured's** failure to pay, jointly and severally by all **Insureds**. The limits of liability set forth in the Declarations are in addition to and in excess of the deductible.

D.    Multiple insureds, claims and claimants

The limits of liability shown in the Declarations and subject to the provisions of this Policy is the amount the **Company** will pay as **damages** and **claim expenses** regardless of the number of **Insureds**, **claims** made or persons or entities making **claims**. If **related claims** are subsequently made against the **Insured** and reported to the **Company**, all such **related claims**, whenever made, shall be considered a single **claim** first made and reported to the **Company** within the **policy period** in which the earliest of the **related claims** was first made and reported to the **Company**.

E.    Supplementary payments

Although not **Damages**, the **Company** will pay, in addition to the applicable limit of liability:

1.    up to $500.00 for loss of earnings to each **Insured** for each day or part of a day of such **Insured's** attendance, at the **Company's** request, at a trial, hearing or arbitration proceeding involving a **claim** against such **Insured**, but in no event shall the amount payable hereunder exceed $10,000.00 per **Insured** despite the number of days the **Insured** is in attendance, or the number of trials, hearings or arbitration proceedings that the **Insured** is required to attend. In no event shall the amount payable hereunder exceed $10,000.00 despite the number of **Insureds** hereunder or the number of such proceedings.

2.    up to $10,000.00 for any **Insured** and in the aggregate, for attorney fees and other reasonable costs, expenses or fees (the "Disciplinary Fees") resulting from a **Disciplinary Proceeding** incurred as the result of a notice of such **Disciplinary Proceeding** both first received by the **Insured** and reported to the **Company** during the **policy period**, arising out of an act or omission in the rendering of **legal services** by such **Insured**. Except as set forth below, the amount payable hereunder shall not exceed $10,000.00 despite the number of **Insureds** hereunder or the number of such proceedings.

In the event of a determination of **No Liability** of the **Insured** against whom the **Disciplinary Proceeding** has been brought, the **Company** shall reimburse such **Insured** for Disciplinary Fees, including those in excess of the $10,000 cap set forth above, up to $100,000. In no event

G-118011-A(c)
Ed.7/01

Shepro_LN104923_000086



shall the amount payable hereunder exceed $100,000 despite the number of **Insureds** hereunder or the number of such proceedings.

### Risk Management Incentives

1. Mediation

   If mediation of a claim takes place either without institution of arbitration proceeding or service of suit or within 60 days of the institution of such proceedings or service of suit, and such claim is ultimately resolved for an amount acceptable to the **Insured** and the **Company** by the process of mediation, the **Insured's** deductible, applying to the **claim**, will be reduced by 50%. In no event shall the amount of the deductible waived hereunder exceed $25,000.

2. Subpoena Assistance

   In the event the **Insured** receives a subpoena for documents or testimony arising out of **legal services** rendered by the **Insured** and the **Insured** would like the **Company's** assistance in responding to the subpoena, the **Insured** may provide the **Company** with a copy of the subpoena and the **Company** will retain an attorney to provide advice regarding the production of documents, to prepare the **Insured** for sworn testimony, and to represent the **Insured** at the **Insured's** depositions, provided that:

   a      the subpoena arises out of a lawsuit to which the **Insured** is not a party; and
   b      the **Insured** has not been engaged to provide advice or testimony in connection with the lawsuit, nor has the **Insured** provided such advice or testimony in the past.

   Such legal counsel's fees incurred under this provision are in addition to the limits of liability and are not applicable to the deductible. Any notice the **Insured** gives the **Company** of such subpoena shall be deemed notification of a potential **claim** under Section V.A. of this Policy.

## III.   DEFINITIONS

Wherever used in this Policy:

A      "**Bodily injury**" means injury to the body, sickness or disease sustained by any person, including death resulting from such injuries; or mental injury, mental anguish, mental tension, emotional distress, pain or suffering or shock sustained by any person whether or not resulting from injury to the body, sickness, disease or death of any person.

B      "**Claim**" means a demand received by the **Insured** for money or services arising out of an act or omission, including **personal injury**, in the rendering of or failure to render **legal services**. A demand shall include the service of suit or the institution of an arbitration proceeding against the **Insured**.

C.     "**Claim expenses**" mean
   1.     fees charged by attorneys designated by the **Company** or by the **Insured** with the **Company's** written consent; and
   2      all other reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **claim** if incurred by the **Company**, or by the **Insured** with the written consent of the **Company**, including, but not limited to, premiums for any appeal bond, attachment bond or similar bond but without any obligation of the **Company** to apply for or furnish any such bond

   **Claim** expenses with respect to a claim will be paid first and payment will reduce the amount available to pay **damages. Claim** expenses shall not include fees, costs or expenses of employees or officers of the **Company**. Nor shall **claim** expenses include salaries, loss of earnings or other remuneration by or to any **Insured**

D.     "**Company**" means the insurance company named in the Declarations

E.     "**Damages**" mean judgments, awards and settlements, provided any settlement is negotiated with the assistance and approval of the **Company**. **Damages** do not include:

G-118011-A(c)
Ed.7/01

Shepro_LN104923_000087



1. legal fees, costs and expenses paid or incurred or charged by the **Insured**, no matter whether claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing;

2. civil or criminal fines, sanctions, penalties or forfeitures, whether pursuant to law, statute, regulation or court rule, including but not limited to awards under 18 U.S.C. §1961, et. seq., Federal Rules of Civil Procedure 11 or 28 U.S.C. §1927 and state statutes, regulations, rules or law so providing, and injuries that are a consequence of any of the foregoing;

3. punitive or exemplary amounts;

4. the multiplied portion of multiplied awards

5. injunctive or declaratory relief;

6. amounts for which the **Insured** is not financially liable or that are without legal recourse to the **Insured**.

F. "**Disciplinary Proceeding**" means any proceeding before a state or federal licensing board or a peer review committee to investigate charges alleging professional misconduct

G. "**Insured**" means the Named **Insured**, predecessor firm and the persons or entities described below:

   1. any lawyer, partnership, professional corporation, professional association, limited liability corporation or limited liability partnership who is or becomes a partner, officer, director, stockholder-employee, associate, manager, member or salaried employee of the **Named Insured** during the **policy period** shown in the Declarations.

   2. any lawyer previously affiliated with the **Named Insured** or a **predecessor firm** as a partner, officer, director, stockholder-employee, associate, manager, member or salaried employee but only for **legal services** performed on behalf of the **Named Insured** or a **predecessor firm** at the time of such affiliation. The term "previously affiliated" as used herein does not include a lawyer who, during the **policy period** and while affiliated with the **Named Insured**: a) voluntarily ceases, permanently and totally, the private practice of law; or b) dies or becomes **totally and permanently disabled**. Such an lawyer will be deemed to be an **Insured** under paragraph one above;

   3. any lawyer, law firm, partnership, professional corporation, professional association, limited liability corporation or limited liability partnership who acts as Of Counsel to the **Named Insured** or any non-employee independent contractor attorney to the **Named Insured**, but only for **legal services** rendered on behalf of the **Named Insured** and only if a fee inured to the **Named Insured** except that no fee need inure to the **Named Insured** where eleemosynary (pro bono) **legal services** are rendered by such Of Counsel **Insured** where at the time of retention, there was approval by the appropriate committee or lawyer within the **Named Insured** as a matter that would be handled without compensation. Any lawyer, law firm, partnership, professional corporation, professional association, limited liability corporation or limited liability partnership who acts as Of Counsel to the **Named Insured**, who previously qualified as an **Insured** under paragraph 1 above, but left the full time practice of law to practice exclusively as Of Counsel to the **Named Insured**, will be deemed to be an **Insured** under paragraph 1 above.

   4. any person who is a former or current employee, other than an employed lawyer, of the **Named Insured** or any **predecessor firm**, but solely for services performed by such person within the course and scope of their employment by the **Named Insured** or any **predecessor firm** and provided that the services in dispute are **legal services** of the **Named Insured** or any **predecessor firm**;

   5. the estate, heirs, executors, administrators, assigns and legal representatives of an **Insured** in the event of such **Insured's** death, incapacity, insolvency or bankruptcy, but only to the extent that such **Insured** would have been provided coverage under this Policy.

H. "**Legal services**" mean

   1. those services performed by an **Insured** for others as a lawyer, arbitrator, mediator, title agent or as a notary public. Any title agency or company, on whose behalf the **Insured** acts as title agent or designated issuing attorney, is not an **Insured** under this Policy;

   2. those services performed by an **Insured** as an administrator, conservator, receiver, executor, guardian, trustee or in any other fiduciary capacity and any investment advice given in connection with such services.

I. "**Named Insured**" means the persons and entities designated in the Declarations.

G-118011-A(c)
Ed.7/01

Shepro_LN104923_000088



J       "No Liability" means a final determination of no liability in favor of the Insured who is the subject of a Disciplinary Proceeding. In no event shall the term "No Liability" apply to a Disciplinary Proceeding for which a settlement has occurred, a determination of no further action is made, or the matter is abandoned by the disciplinary authority.

K       "Personal injury" is an injury resulting from an act or omission arising out of:
false arrest, detention, or imprisonment; wrongful entry, or eviction, or other invasion of the right of private occupancy; libel, slander, or other disparaging or defamatory materials; a writing or saying in violation of an individual's right to privacy; malicious prosecution or abuse of process.

L.      "Policy period" means the period of time between the inception date and time shown in the Declarations and the date and time of termination, expiration or cancellation of this Policy.

M.      "Predecessor firm" means any entity which has undergone dissolution and is named as such on the Declarations.

N.      "Prior insurer" means an insurer, including the Company and any subsidiary or affiliate of the Company, who has issued a lawyers professional liability insurance policy that is applicable to a claim, such policy having an inception date prior to the policy period.

O.      "Related acts or omissions" mean all acts or omissions in the rendering of legal services that are temporally, logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision.

P       "Related claims" mean all claims arising out of a single act or omission or arising out of related acts or omissions in the rendering of legal services.

Q.      "Totally and permanently disabled" means that an Insured is so disabled as to be wholly prevented from rendering legal services provided that such disability:
    1.      has existed continuously for not less than six (6) months; and
    2.      is reasonably expected to be continuous and permanent.

IV      EXCLUSIONS

This Policy does not apply:

A.      to any claim based on or arising out of any dishonest, fraudulent, criminal or malicious act or omission by an Insured except that this exclusion shall not apply to personal injury. The Company shall provide the Insured with a defense of such claim unless or until the dishonest, fraudulent, criminal or malicious act or omission has been determined by any trial verdict, court ruling, regulatory ruling or legal admission, whether appealed or not. Such defense will not waive any of the Company's rights under this Policy. Criminal proceedings are not covered under this Policy regardless of the allegations made against the Insured;

B.      to any claim for bodily injury, or injury to, or destruction of, any tangible property, including the loss of use resulting therefrom except that the exclusion of bodily injury does not apply to mental injury, mental anguish, mental tension, or emotional distress caused by personal injury;

C.      to any loss sustained by an Insured or claim made against an Insured as beneficiary or distributee of any trust or estate;

D.      to any claim based on or arising out of the Insured's alleged liability under any oral or written contract or agreement, unless such liability would have attached to the Insured in the absence of such agreement;

E.      to any claim by or on behalf of an Insured under this Policy against any other Insured hereunder unless such claim arises out of legal services by an Insured rendered to such other Insured as a client;

F.      to any claim based on or arising out of an Insured's capacity as:
    1.      a former, existing or prospective officer, director, shareholder, partner or manager of a business enterprise or charitable organization (if the above are not named in the Declarations); or

G-118011-A(c)
Ed.7/01

Shepro_LN104923_000089



2.    a former, existing or prospective officer, director, shareholder, partner manager, or trustee of a fund or trust which is a pension, welfare, profit-sharing, mutual or investment fund or trust; or

3.    a fiduciary under the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto or any other similar state or local law,

except that this exclusion shall not apply to a claim based on or arising out of an Insured's capacity as a member, director or officer of any professional legal association, its governing board or any of its committees.

G.    to any claim based on or arising out of an Insured's capacity as a public official or an employee or representative of a governmental body, subdivision or agency unless the Insured is deemed as a matter of law to be a public official or employee or representative of such entity solely by virtue of rendering legal services to it:

H.    to any claim based on or arising out of legal services performed for any existing or prospective partnership, organization, corporation, company or other business enterprise (including the ownership, maintenance or care of any property in connection therewith), not named in the Declarations, if at the time of the act or omission giving rise to such claim:

   1.    any Insured controlled, operated or managed or intended to control, operate or manage such enterprise; or

   2.    any Insured was :

      a      a partner or employee of such enterprise, or

      b      more than a 10% shareholder or a sole proprietor of such enterprise, or

   3.    Insureds cumulatively were more than a 10% shareholder of such enterprise,

except that this exclusion shall not apply to any claim based on or arising out of legal services to any professional legal association, its governing board or any of its committees. As used in this exclusion, the word "partner" shall be deemed to include members of limited liability companies or limited liability partnerships;

V     CONDITIONS

   A.    Notice of claims and potential claims

      1      The Insured, as a condition precedent to the obligations of the Company under this Policy, shall immediately give written notice to the Company during the policy period

         a      of any claim made against the Insured:

         b      of the Insured's receipt of any notice, advice or threat, whether written or verbal, that any person or organization intends to hold the Insured responsible for any alleged breach of duty.

      2.    If during the policy period the Insured shall become aware of any act or omission that may reasonably be expected to be the basis of a claim against the Insured and gives written notice to the Company of such act or omission and the reasons for anticipating a claim, with full particulars, including but not limited to:

         a      the specific act or omission,

         b      the dates and persons involved;

         c.    the identity of anticipated or possible claimants;

         d      the circumstances by which the Insured first became aware of the possible claim, then any such claim that is subsequently made against the Insured and reported to the Company shall be deemed to have been made at the time such written notice was given to the Company.

   B.    Innocent Insured

      Whenever coverage under this Policy would be excluded, suspended or lost because of any exclusion relating to criminal, dishonest, fraudulent, or malicious conduct by any person insured hereunder, the Company agrees that such insurance, as would otherwise be afforded under this Policy, shall be applicable with respect to an Insured who did not personally participate or personally acquiesce in or remain passive (including failure to give timely notice) after having knowledge of such conduct. The Company's obligation to pay damages under this Condition B will be excess of the full extent of the assets of any Insured involved in such criminal, dishonest, fraudulent, or malicious conduct.

G-118011-A(c)
Ed.7/01

Shepro_LN104923_000090



C.  Reimbursement of the **Company**

If the **Company**, in the exercise of its discretion and without any obligation to do so, pays any amount in excess of the applicable limits of liability or within the amount of the deductible, the **Named Insured**, or upon the **Named Insured's** failure to pay, the **Insureds**, jointly and severally, shall be liable to the **Company** for any and all such amounts and, upon demand, shall pay such amounts to the **Company**.

D.  Territory

This Policy applies to an act or omission taking place anywhere in the world, provided that the **claim** is made and suit is brought against the **Insured** within the United States of America, including its territories, possessions, Puerto Rico or Canada.

E.  Alternative dispute resolution

After the final adjudication or settlement of a **claim**, any dispute concerning allegations of bad faith or tort against the **Company** regarding the appropriateness or value of any settlement or final disposition of any **claim** that exceeds the deductible may be submitted to any form of alternative dispute resolution acceptable to the **Company** and the **Insured**. Should the **Company** and the **Insured** be unable to agree on the form of alternative dispute resolution, then such dispute shall be submitted to binding arbitration. Except as set forth below, the rules of the American Arbitration Association shall apply. The arbitration panel shall consist of one arbitrator selected by the **Company**, one arbitrator selected by the **Insured**, and one arbitrator selected by the first two arbitrators. If the two arbitrators selected cannot agree on a third arbitrator, then the American Arbitration Association shall appoint an arbitrator.

F.  Other insurance

If there is other insurance that applies to the **claim**:
1.  on a claims made basis, this insurance shall be excess over such other valid and collectible insurance whether such insurance is stated to be primary, contributory, excess, contingent or otherwise. This does not apply to insurance that is purchased by the **Named Insured** specifically to apply in excess of this insurance.
2.  on an occurrence basis, this insurance shall be available in the amount by which the limit of liability for this Policy exceeds the applicable limit of liability of such other valid and collectible insurance. The difference shall be the maximum the **Company** shall pay under this Policy with respect to a **claim**. If the applicable limit of liability of such other valid and collectible insurance is equal to or greater than the maximum payable under this Policy, then this Policy shall not afford any insurance with respect to such **claim**.

G.  Assistance and cooperation of the **Insured**

1.  The **Insured** shall cooperate with the **Company** and, upon the **Company's** request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving of evidence, obtaining the attendance of witnesses, and the conduct of suits and proceedings in connection with a **claim**.
2.  The **Insured** shall assist in the enforcement of any right of contribution or indemnity against any person or organization who or which may be liable to any **Insured** in connection with a **claim**.
3.  The **Insured** shall not, except at its own cost, voluntarily make any payment, assume or admit any liability or incur any expense without the consent of the **Company**.

H.  Action against the **Company**

No action shall lie against the **Company** unless, as a condition precedent thereto:
1.  there shall have been full compliance with all the terms of this Policy; and
2.  the **Insured's** obligation to pay shall have been finally determined either by judgment against the **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the **Company**.
Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by this Policy. No person or organization shall have any right under this Policy

G-118011-A(c)
Ed.7/01

Shepro_LN104923_000091



to join the **Company** as a party to any action against an **Insured**, nor shall the **Company** be impleaded by the **Insured** or his legal representative. Bankruptcy or insolvency of the **Insured** or of the **Insured**s estate shall not relieve the **Company** of any of its obligations hereunder.

I.    Subrogation

In the event of any payment under this Policy, the **Company** shall be subrogated to all the **Insured**'s rights of recovery thereof against any person or organization, including any rights such **Insured** may have against any other **Insured** involved in dishonest, fraudulent, criminal, malicious or intentional conduct. The **Insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure and collect upon such rights. The **Insured** shall do nothing to prejudice such rights.

J.    Changes

Notice to any of the **Company's** agents or knowledge possessed by any such agent or any other person shall not act as a waiver or change in any part of this Policy. It also will not prevent the **Company** from asserting any rights under the provisions of this Policy. None of the provisions of this Policy will be waived, changed or modified except by written endorsement, signed by the **Company**, issued to form a part of this Policy.

K.    Assignment

No assignment of interest of the **Insured** under this Policy shall be valid, unless the written consent of the **Company** is endorsed hereon.

L.    Cancellation/ Nonrenewal

1.    This Policy may be canceled by the **Named Insured** by returning it to the **Company**. The **Named Insured** may also cancel this Policy by written notice to the **Company** stating at what future date cancellation is to be effective.

2.    The **Company** may cancel or non-renew this Policy by written notice to the **Named Insured** at the address last known to the **Company**. The **Company** will provide written notice at least sixty (60) days before cancellation or non-renewal is to be effective. If the **Company** cancels this Policy because the **Insured** has failed to pay a premium when due or has failed to pay amounts in excess of the limit of the **Company**'s liability or within the amount of the deductible, this Policy may be canceled by the **Company** by mailing to the **Named Insured** written notice stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The time of surrender of this Policy or the effective date and hour of cancellation stated in the notice shall become the end of the **policy period**. Delivery (where permitted by law) of such written notice either by the **Named Insured** or by the **Company** shall be equivalent to mailing.

3.    If the **Company** cancels this Policy, the earned premium shall be computed pro rata. If the **Named Insured** cancels this Policy, the **Company** shall retain the customary short rate proportion of the premium. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

4.    The offering of terms and conditions different from the expiring terms and conditions shall not constitute a refusal to renew.

M.    Entire contract

By acceptance of this Policy the **Insured** agrees that:

1.    all of the information and statements provided to the **Company** by the **Insured** are true, accurate and complete and shall be deemed to constitute material representations made by all of the **Insureds**;

2.    this Policy is issued in reliance upon the **Insured's** representations;

3.    this Policy, endorsements thereto, together with the completed and signed application and any and all supplementary information and statements provided by the **Insured** to the **Company** (all of which are deemed to be incorporated herein) embody all of the agreements existing between the **Insured** and the **Company** and shall constitute the entire contract between the **Insured** and the **Company**; and

G-118011-A(c)
Ed.7/01

Shepro_LN104923_000092



4.    the misrepresentation of any material matter by the **Insured** or the **Insured's** agent will render this Policy null and void and relieve the **Company** from all liability herein.

N.    Named **Insured** sole agent

The **Named Insured** shall be the sole agent of all **Insureds** hereunder for the purpose of effecting or accepting any notices hereunder, any amendments to or cancellation of this Policy, for the completing of any applications and the making of any statements, representations and warranties, for the payment of any premium and the receipt of any return premium that may become due under this Policy, and the exercising or declining to exercise any right under this Policy.

O.    Liberalization

If the **Company** adopts any revision that would broaden coverage under this policy form G-118011-A without additional premium at any time during the **policy period,** the broadened coverage will immediately apply to this Policy except that I will not apply to **claims** that were first made against the **Insured** prior to the effective date of such revision.

P.    Notices

Any notices required to be given by an **Insured** shall be submitted in writing to the **Company** or its authorized representative. If mailed, the date of mailing of such notice shall be deemed to be the date such notice was given and proof of mailing shall be sufficient proof of notice.

VI.    EXTENDED REPORTING PERIODS

As used herein, **"extended reporting period"** means the period of time after the end of the **policy period** for reporting **claims** by reason of an act or omission that occurred prior to the end of the **policy period** and is otherwise covered by this Policy.

A.    Automatic extended reporting period

If this Policy is canceled or non-renewed by either the **Company** or by the **Named Insured,** the **Company** will provide to the **Named Insured** an automatic, non-cancelable **extended reporting period** starting at the termination of the **policy period** if the **Named Insured** has not obtained another policy of lawyers professional liability insurance within sixty (60) days of the termination of this Policy. This automatic extended reporting period will terminate after sixty (60) days.

B.    Optional extended reporting period

1.    If this Policy is canceled or non-renewed by either the **Company** or by the **Named Insured,** then the **Named Insured** shall have the right to purchase an optional **extended reporting period.** Such right must be exercised by the **Named Insured** within sixty (60) days of the termination of the **policy period** by providing:
    a    written notice to the **Company;** and
    b    with the written notice, the amount of additional premium described below.

2.    The additional premium for the optional **extended reporting period** shall be based upon the rates for such coverage in effect on the date this Policy was issued or last renewed and shall be for one (1) year at 100% of such premium; two (2) years at 150% of such premium, three (3) years at 175% of such premium; six (6) years at 225% of such premium; or for an unlimited period at 250% of such premium.

C.    Death or disability extended reporting period

1.    If an **Insured** dies or becomes totally and permanently disabled during the **policy period,** then upon the latter of the expiration of: the **policy period;** any renewal or successive renewal of this Policy; or any automatic or optional **extended reporting period,** such **Insured** shall be provided with a death or disability **extended reporting period** as provided below.
    a    In the event of death, such **Insured's** estate, heirs, executors or administrators must, within sixty (60) days of the expiration of the **policy period,** provide the **Company** with

G-118011-A(c)
Ed.7/01

Shepro_LN104923_000093



written proof of the date of death. This **extended reporting period** is provided to the estate, heirs, executors and administrators of such **Insured.**

    b    If an **Insured** becomes totally and permanently disabled, such **Insured** or **Insured's** legal guardian must, within sixty (60) days of the expiration of the **policy period**, provide the **Company** with written proof that such **Insured** is **totally and permanently disabled**, including the date the disability commenced, certified by the **Insured's** physician. The **Company** retains the right to contest the certification made by the **Insured's** physician, and it is a condition precedent to this coverage that the **Insured** agree to submit to medical examinations by any physician designated by the **Company**. This **extended reporting period** is provided until such **Insured** shall no longer be **totally or permanently disabled** or until the death of such **Insured** in which case subparagraph a. hereof shall apply.

    2.    No additional premium will be charged for any death or disability extended reporting period.

D.    Non-practicing extended reporting period

    1.    If an **Insured** retires or otherwise voluntarily ceases, permanently and totally, the private practice of law during the **policy period** and has been continuously insured by the **Company** for at least three consecutive years, then such **Insured** shall be provided with an **extended reporting period** commencing upon the latter of the expiration of: the **policy period**; any renewal or successive renewal of this Policy; or any automatic or optional **extended reporting period**.

    2.    This **extended reporting period** is provided until the death of such **Insured** in which case subparagraph C.1. hereof shall apply or, until such **Insured** shall resume the practice of law.

    3.    No additional premium will be charged for any non-practicing extended reporting period.

E.    Extended reporting periods limits of liability

    1.    Automatic and optional **extended reporting periods** limits of liability

        a    Where the **Company** has the right to nonrenew or cancel this Policy and it exercises that right, then the **Company's** liability for all **claims** reported during the automatic and optional **extended reporting periods** shall be part of and not in addition to the limits of liability for the **policy period** as set forth in the Declarations and Section II, Limits of Liability of this Policy.

        b    If this Policy is canceled by the **Named Insured** or if the **Company** offers to renew this Policy, and the **Named Insured** refuses such renewal offer, then the **Company's** liability for all **claims** reported during the automatic and optional **extended reporting periods** shall be reinstated to the limits of liability applicable to this Policy as set forth in Section II.A. and B. hereof.

    2.    Separate death or disability and non-practicing **extended reporting period** limits of liability

        a    Limit of Liability - Each "**Claim**"

        Subject to paragraph B below, the **Company's** limit of liability for each claim first made against the **Insured**, and reported to the **Company** during the death or disability **extended reporting period** or non-practicing **extended reporting period**, shall not exceed the amount stated in the declarations as the "Each **Claim** Death or Disability and Non-Practicing **extended reporting period** limit of liability"

        b    Limit of Liability - In the Aggregate

        The limit of liability of the **Company** for all **claims** first made against the **Insured**, and reported to the **Company** during the death or disability **extended reporting period** or non-practicing **extended reporting period**, shall not exceed the amount stated in the Declarations as the "Aggregate Death or Disability and Non-Practicing **extended reporting period** limit of liability".

F.    Elimination of right to any **extended reporting period**

G-118011-A(c)
Ed.7/01

Shepro_LN104923_000094



There is no right to any **extended reporting period**:

1. If the **Company** shall cancel or refuse to renew this Policy due to:
   a    non-payment of premiums, or
   b    non-compliance by an **Insured** with any of the terms and conditions of this Policy; or
   c    any misrepresentation or omission in the application for this Policy, or,
2. If at the time this right could be exercised by an **Insured**, such **Insured's** right to practice law has been revoked, suspended or surrendered at the request of any regulatory authority for reasons other than that the **Insured** is **totally and permanently disabled**.

G.    Extended reporting period not a new policy

It is understood and agreed that the **extended reporting period** shall not be construed to be a new policy and any claim submitted during such period shall otherwise be governed by this Policy.

IN WITNESS WHEREOF, the **Company** has caused this Policy to be executed by its Chairman and Secretary, but this Policy shall not be binding upon the **Company** unless completed by the attachment of the Declarations and signed by a duly authorized representative of the **Company**.

Chairman                                    Secretary

G-118011-A(c)
Ed.7/01

Shepro_LN104923_000095

# B

05/20/2007 11:37 8605336699 KRONHOLM INS PAGE 02/75

# SHEPRO & BLAKE, LLC

### ATTORNEYS AT LAW
2051 MAIN STREET
STRATFORD, CT 06615-6341
TELEPHONE (203) 377-0770
FACSIMILE (203) 377-6789

DANIEL SHEPRO +
KEVIN M. BLAKE **
NATHALIE FEOLA-GUERRIERI

---

TAE I. CHUNG+^
STUART HAWKINS
JEFFREY A. SHEPRO
REBEKAH L. SPRANO^
D. GREGORY TIRONE^

OF COUNSEL:
ROGER LEE CROSSLAND
SUSAN S. LEWIS

+ALSO ADMITTED IN THE DISTRICT OF COLUMBIA
+ALSO ADMITTED IN MASS.
*ALSO ADMITTED IN N.Y.
^BOARD CERTIFIED WORKERS' COMPENSATION SPECIALIST

PARALEGALS:
THOMAS W. BUCCI, JR.
STACI JOHNSON
LINDA MOLINA
THERESE PEAL
STEPHANIE ROBERTSON

ACCOUNTING ADMINISTRATOR:
LISA SACCONE

ANSONIA OFFICE:
200 MAIN STREET, 2ND FLOOR
ANSONIA, CT 06401

REPLY TO STRATFORD

June 7, 2007

Mr. William S. Morrison          **FED EX**
Morrison Insurance Agency
580 Tunxis Hill Road
Fairfield, CT 06825

Re: Daniel Shepro - Shepro & Blake, LLC
    Former Dkt. No. ESX-L-4058-99
    Chancery Dkt. No. ESX-C-397-99
    Consolidated with and filed under Consolidated Dkt. No. ESX-C-280-98
    Civil Action (Action No. 2)
    Peter Mocco, et al vs. James J. Licata, et al

Dear Bill:

I am enclosing a copy of a complaint served on me. I tried to dismiss it for lack
of jurisdiction, but was denied.

The suit arises from me signing a deed (see par. 23, 102-112 of the complaint)
with a power-of-attorney for a client. A third party, Mocco, claims as a result I
and others committed various torts as follows:

| Count IV | Trespass to Land |
|----------|------------------|
| Count XVI | Slander of Title |
| Count XVIII | Fraud |
| Count XIX | Quiet Title/Declaratory Judgment |
| Count XX | RICO |

JUN 2 0 2007

Shepro_LN104923_000010

06/20/2007  11:37   8506336699                    KRONHOLM INS                         PAGE  03/76

Mr. William S. Morrison
June 7, 2007
Page Two

Plaintiffs also added defendants, Proskauer Rose and Dale Schrieber of
Proskauer Rose, a large well known New York law firm.

We deny the essential allegations.

Please forward the complaint to The Hartford for its coverage.

Thank you.

Very truly yours,

Daniel Shepro

DS/sj
Enclosure

Shepro_LN104923_000011



 



*CNA 40 Wall Street 9ᵗʰ Floor New York, New York 10005*

*Rosemary Tramuta*
*Claims Technician*
*Lawyers Professional Liability*
*Telephone     1-212-440-3854*
*Internet     Rosemary.Tramuta@cna.com*

Wednesday, June 20, 2007

PERSONAL/CONFIDENTIAL
Shepro & Blake, LLC
2051 Main Street
Stratford, Connecticut 0661-6341

Re:   Acknowledgment of New Loss

|  |  |
|---|---|
| Insured: | Shepro & Blake, LLC |
| State: | Connecticut |
| Claimant: | Peter Mocco et al |
| Policy No.: | LAW 287078473 |

Dear Insured:

Continental Casualty Company acknowledges receipt of correspondence dated  6/20/07.  A file has been established with number LN 104923 which should be referenced when communicating with Continental.

This matter is being assigned to a claims professional, who will contact you to discuss this matter. If you have not been contacted by the time you receive this letter, please contact this office

CNA
Lawyer's E & O Claims
40 Wall Street 9ᵗʰ Floor
New York, New York 10005
(877) 269-3277

Pending the commencement of our review of this matter, we will act with the understanding that all parties reserve their respective rights pertaining to the coverage afforded by the Policy.

If you have any questions or concerns, please contact us at the above address or phone number.

Very truly yours,
*Rosemary Tramuta*
Rosemary Tramuta

Cc: Kronholm Insurance Services – 155 Oak Street – Glastonbury, CT 06033

www.cna.com

Shepro_LN104923_000006





PO Box 8317
Chicago, IL 60680-8317

August 27, 2014

**Maryann Metz CCLS**
Claims Consultant
Lawyers E&O Claims
Telephone 312-822-3940
Facsimile 866-419-6306
E-mail meryann.metz@cna.com

Daniel Shepro
Shepro & Blake LLC
2051 Main Street
Stratford, Connecticut 06615

SENT CERTIFIED MAIL RETURN RECEIPT REQUESTED

> Re   Insured     Shepro & Blake LLC
>      File Number  LN104923
>      Regarding    Peter Mocco et al

Dear Mr Shepro,

As you know, Continental Casualty Company provides coverage for this matter under the policy period 11/07/2006 to 11/07/2007  Limits of liability are $5,000,000 each claim and in the aggregate  There is a $10,000 deductible per claim inclusive of claims expenses

The Proposed Second Amended and Supplemented Complaint allege fraud and are seeking to recover punitive damages  Under the Definitions section of the policy, "Damages do not include punitive or exemplary amounts".  Therefore punitive damages are not covered under the policy  Additionally, Under the Exclusions section of the policy, "This Policy does not apply to any claim based on or arising out of any dishonest, fraudulent, criminal or malicious act or omission by an Insured".  Fraud is not covered under the policy.

Currently, we are awaiting the trial ownership which was postponed until September 16, 2014 pending motions in the bankruptcy court.  We thank you for your continued cooperation in this matter as we look toward resolution  Should you have any questions regarding this matter please contact me?

Sincerely,

Maryann Metz

www.cna.com

Shepro_LN104923_000001





PO Box 8317
Chicago, IL 60680-8317

August 15, 2019

**Steven McMannon**
Claims Consulting Director
CHICAGO IL
Telephone 312-822-2423

Facsimile
Email    Steven.McMannon@cna.com

Daniel Shepro
Shepro&Hawkins, LLC
2103 MAIN ST
STRATFORD, CT 06615-6300

| | |
|---|---|
| Claim Number | LN104923 |
| Policyholder | SHEPRO & BLAKE LLC |
| Underwriting Co: | Continental Casualty Company |
| Date of Loss: | 06/20/2007 |
| Policy Number: | 287078473 |
| | Claimants: Peter Mocco, et al. |

Dear Mr. Shepro,

On behalf of Continental Casualty Company ("Continental"), this will follow up on our prior communications about this matter which arises out of a transaction in which you drafted a quitclaim deed for Cynthia Licata purporting to transfer ownership of a limited liability company known as FCHG IV LLC from Licata to an entity known as SWJ. At the center of this action is a dispute between the Mocco parties and the Licata parties as to which owned certain New Jersey limited liability companies ("LLCs") which held title to "extremely valuable parcels of real estate" in New Jersey. The Mocco claims stem from this deed and whether you knew or should have known about the disputes in ownership of the LLC before preparing the deed. Mocco is claiming that there is a pattern of misrepresentations made by Licata, SWJ and various professionals acting in concert to induce lenders and title insurers to engage in a transaction with respect to the properties allegedly owned by Mocco, which clouded the title to the properties and interfered with Mocco's ability to refinance and otherwise manage and develop the properties. The various lenders (Lenders) that provided financing for the SWJ/Licata transaction have also filed third-party claims against you with respect to the transaction.

In this letter, we summarize the allegations made by Mocco and by the Lenders to help explain our coverage position, but please refer to the Mocco Complaint and the Lenders Third Party Complaint for the complete allegations (collectively, the "Mocco Action"). Our discussion does not reflect our view that the allegations have merit since they are unproven. Further, this letter does not change any of the terms and conditions of the above-referenced policy, which we suggest that you review together with this letter. Continental's investigation is continuing, and a final determination of all of the coverage issues raised by this matter may not be possible until the lawsuit has been resolved.

Mocco Claims:

CNAL0500

Shepro_LN104923_000002

Claim Number:   LN104923                    - 2 -                        August 15, 2019

As part of the Second Amended Complaint, four of the twenty counts include claims against you.
The claims against you (Shepro) are:

a. Trespass to Land (Count VI). The claim for trespass to land alleges that Cynthia Licata, SWJ,
and her attorneys (including Shepro) have "attempted to, and have actually exercised control over
substantial real estate owned by the Mocco Parties, without consideration or authorization." This
alleged control was accomplished through recording deeds, increasing liens, attempting to sell and
encumber Mocco properties with both actual malice and reckless indifference. As a result, plaintiffs
seek compensatory damages, costs, an injunction against further interference with the Moccos'
ownership of FCHG IV and other properties and an injunction directing corrective deeds and other
instruments to be filed.

b. Slander of Title (Count XVI). This claim alleges that on March 13, 2006 although the sale to SWJ
was closed, SWJ failed to pay full consideration and subsequently defaulted on its obligations. The
Vermont Bankruptcy Court previously determined that the LLCs were owned by the Moccos and
that the Licatas were merely nominees. The Bankruptcy Court's order was known to all parties and
their attorneys but the Licatas, through their counsel, including Shepro, recorded deeds and
attempted to sell properties in which they had no right to sell. As such, plaintiffs claim that the deeds
affecting title to Mocco properties were false and slandered the true title holders, i.e., the Moccos.

c. Fraud (Count XVIII). Plaintiffs allege that the filing of false deeds with respect to Liberty Harbor,
the Atrium, Fulton's Landing and FCHG IV constitutes a false representation and was intended to
induce others to rely on the false representations. It is alleged that Shepro (and others) "were
necessary and instrumental to perpetrating the fraud."

d. Claims under N.J.S.A. 2C:41-1 et seq.- RICO (Count XX) All Titian and Licata defendants are
named in a global RICO allegation for which plaintiffs are seeking treble damages. This allegation is
based on the scheme to defraud the plaintiffs and the alleged use of the U.S. Mail for the purposes
of effectuating a scheme to defraud. It is not clear whether this count is directed against you as one
of the Licata defendants.

Lender Claims:

The Lenders claims are against the "opinion letter defendants" (including Shepro) for issuing an
opinion that the loan and mortgage were valid. The Lenders claim attorney malpractice with
respect to Shepro in that Horizon Title Agency, Inc. ("Horizon") and its title searcher, David J. Cohn
("Cohn"), were agents of the Lenders, knowledge held by Horizon and/or Cohn was imputed to the
Lenders, and that Horizon and Cohn relied on the advice and representations of Shepro.

Policy:

Continental issued claims-made-and-reported Lawyers Professional Liability Policy No.
LAW287078473 to Shepro & Blake, LLC as Named Insured for the 11/07/2006 to 11/07/2007
policy period (the "Policy"). The limit of liability is $5,000,000 per claim and $5,000,000 in the
aggregate for the policy period. Claims expenses over the deductible are inside of and act to
reduce the limit of liability. There is also a $10,000 per claim deductible that applies to claims
expenses as well as indemnity payments. The limits of liability are in excess of the deductible.

CNAL0500

Shepro_LN104923_000003

Claim Number:  LN104923                    - 3 -                         August 15  2019

As you know from our previous communications, Continental is providing you with a defense of the Mocco Action, subject to a reservation of rights. This letter is simply to remind you that there are some issues that could limit or potentially preclude entirely the coverage available for this matter under the Policy.

Definition of Damages and Insurability:

Subject to all of the Policy's terms, conditions, limitations, and exclusions – and other than claim expenses and certain supplementary payments that are not at issue at this time – the Policy provides coverage solely for "damages." See Policy, Section I.A.  "Damages" are defined in Section III of the Policy to mean judgments, awards, and settlements provided that any settlement is negotiated with Continental's assistance and approval. However, "damages" do not include punitive or exemplary amounts or the multiplied portion of multiplied awards.

Please be aware that there would be no coverage under the Policy for the Mocco Action for any amounts, other than claim expenses or supplementary payments, that do not constitute covered "damages" under the Policy or that are uninsurable. Continental reserves all of its rights under the Policy's definition of "damages" and with respect to matters or amounts that may be uninsurable under applicable law.

Fraud/Dishonesty Exclusion

Section IV.A. of the Policy provides, in part, that the Policy does not apply to "any claim based on or arising out of any dishonest, fraudulent, criminal or malicious act or omission by an Insured except that . . . . Continental shall provide the Insured with a defense of such claim unless or until the dishonest, fraudulent, criminal or malicious act or omission has been determined by any trial verdict, court ruling, regulatory ruling or legal admission, whether appealed or not." As discussed in more detail above, Plaintiffs allege that you engaged in intentionally wrongful, fraudulent and criminal conduct. Continental thus reserves all of its rights under Exclusion IV.A. in the Policy.

Uncovered/excess exposure:

It is unclear exactly how much the Mocco parties and the Lenders are seeking to recover. However, it does appear to be in excess of your Policy limits, and coverage may be unavailable for most, if not all, of any amounts claimed. In light of this potential substantial uncovered exposure, you may wish to consult with independent counsel at your own expense concerning this matter.

Assistance/cooperation

Finally, please be aware of Policy Section V.G., titled "Assistance and cooperation of the Insured," which provides in part that the Insured will cooperate with Continental and that the Insured will not, except at its own cost, voluntarily make any payment, assume or admit any liability, or incur any expense without Continental's consent. Please do not admit or assume any liability, consent to any judgment, agree to any settlement, or make any settlement offer without our consent.

Please note that the coverage position set forth in this letter is based on the information available to

CNAL0500

Shepro_LN104923_000004

Claim Number:   LN104923                    - 4 -                         August 15, 2019

Continental to date. Continental continues to fully reserve all of its rights with respect to the Mocco Action, including but not limited to the right to supplement or modify its position. Neither this letter nor any other act on behalf of Continental should be construed as waiving any such rights

If you have any questions or comments regarding the issues discussed in this letter or any other aspect of this matter, please feel free to contact me.

Please use our claim number when corresponding with our office.

Sincerely,

Steven McMannon

CNAL0500

Shepro_LN104923_000005

ESSEX COUNTY - CIVIL DIVISION
SUPERIOR COURT OF NJ
465 MARTIN LUTHER KING JR BLVD
NEWARK        NJ 07102

TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (973) 776-9300
COURT HOURS  8:30 AM - 4:30 PM

DATE:   NOVEMBER 04, 2021
RE:     NBJC HOLDINGS LLC   VS CONTINENTAL CASUALTY  COMP
DOCKET: ESX L -008315 21

THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 1.

DISCOVERY IS   150 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

THE PRETRIAL JUDGE ASSIGNED IS:  HON THOMAS M. MOORE

IF YOU HAVE ANY QUESTIONS, CONTACT TEAM     003
AT:  (973) 776-9300 EXT 56904.

IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.

ATTENTION:

ATT: JOHN B. NANCE
SCARPONE & VARGO LLC
50 PARK PL STE 1003
NEWARK         NJ 07102

ECOURTS

# Civil Case Information Statement

## Case Details: ESSEX | Civil Part Docket# L-008315-21

**Case Caption:** NBJC HOLDINGS LLC  VS CONTINENTAL
CASUALTY  COMP

**Case Initiation Date:** 11/04/2021

**Attorney Name:** JOHN B NANCE

**Firm Name:** SCARPONE & VARGO LLC

**Address:** 50 PARK PL STE 1003

NEWARK NJ 07102

**Phone:** 9736234101

**Name of Party:** PLAINTIFF : NBJC Holdings LLC

**Name of Defendant's Primary Insurance Company**
(if known): None

**Case Type:** OTHER INSURANCE CLAIM (INCLUDING
DECLARATORY JUDGMENT ACTIONS)

**Document Type:** Complaint

**Jury Demand:** NONE

**Is this a professional malpractice case?**  NO

**Related cases pending:** YES

**If yes, list docket numbers:** ESX-L-7709-13

**Do you anticipate adding any parties (arising out of same
transaction or occurrence)?** NO

**Are sexual abuse claims alleged by: NBJC Holdings LLC?** NO

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual
management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the
court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

11/04/2021
Dated

/s/ JOHN B NANCE
Signed