**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NBJC HOLDINGS, LLC f/k/a FIRST CONNECTICUT HOLDING GROUP IV, INC., *Plaintiff*, v. CONTINENTAL CASUALTY COMPANY, DANIEL SHEPRO, SHEPRO & BLAKE, LLC and CHICAGO TITLE INSURANCE COMPANY, *Defendants*. | Civil Action No. 21-20368 **OPINION** |

**Evelyn Padin, U.S.D.J.**

Plaintiff NBJC Holdings, LLC f/k/a First Connecticut Holding Group IV, Inc. ("NBJC"), by way of this action which it commenced in New Jersey Superior Court, seeks a summary declaration that Defendant Continental Casualty Company ("Continental") is estopped from disclaiming liability coverage to its insured, Defendant Daniel Shepro, on the still-pending claims which NBJC and other affiliated parties have asserted against Shepro in a separate state court action, *Mocco v. Licata*, Consolidated Docket No. ESX-L-7709-13. *See* D.E. 9. Continental and Defendant Chicago Title Insurance Company ("Chicago Title") both move for dismissal of this matter as, *inter alia*, unripe for adjudication by this Court. *See* D.E.s 7 and 15-1. For the reasons that follow, the Court agrees that NBJC's request for declaratory judgment is not yet ripe for purposes of satisfying Article III's case or controversy requirement and separately concludes that this matter must be **REMANDED** to New Jersey Superior Court.

I. BACKGROUND

NBJC is a real estate holding company which owns approximately 175 rental properties. D.E. 1-1 at ¶ 2. The issue of who owns NBJC, the Mocco family or the Licata family, was the subject of litigation in New Jersey Superior Court beginning in 1999, when the original Mocco complaint against the Licatas was filed. *Id.* at ¶ 8. While it appears that the issue of ownership of NBJC, specifically, has since been resolved in favor of the Moccos, NBJC is only one of a number of real estate assets that are at the heart of the larger *Mocco v. Licata* litigation that is still pending in New Jersey state court.

In September 2001, the Hon. Kenneth S. Levy, J.S.C., who was the judge then presiding over the *Mocco v. Licata* litigation, entered an order that prohibited the transfer of and/or placing of encumbrances on the properties and holding companies in dispute, including NBJC. In May 2006, Shepro, acting as Cynthia Licata's attorney-at-law and attorney-in-fact, executed deeds and mortgages which transferred title to, and created $38 million in liens upon, NBJC-owned properties. *See id.* at ¶¶ 13, 14. There appears to be no dispute that Shepro's actions violated the prohibitions of Judge Levy's 2001 order and clouded title on those properties; whether Shepro is subject to legal liability for his actions, however, is an issue that remains unresolved and pending in the underlying *Mocco v. Licata* state court matter.

On March 7, 2007, NBJC and certain affiliated parties, including the Moccos, amended their complaint in the *Mocco v. Licata* state court litigation to, *inter alia*, assert direct claims against Shepro and his then-law firm, Shepro & Blake LLC, based on Shepro's role in facilitating the title transfers and encumbrances of NBJC-owned properties in 2006. *Id.* at ¶ 16. On June 7, 2007, Shepro submitted a claim for defense and indemnification to his legal malpractice carrier, Continental, under the professional liability policy which Continental issued to Shepro on

November 2, 2006.  *Id.* at ¶ 19.  Continental has been actively involved in Shepro's defense in the *Mocco v. Licata* litigation ever since.  *See id.* at ¶ 24.

According to NBJC, although Continental has assumed responsibility for, and controlled Shepro's defense since 2007, it was not until 2014 that Continental, for the first time, advised Shepro that any fraud and punitive damages he may be found liable for in *Mocco v. Licata* would not be covered by Continental.  *Id.* at ¶ 22.  NBJC further avers that it was not until 2019 that Continental, for the first time, formally advised Shepro that "coverage may be unavailable for most, if not all, of the amounts claimed" in the underlying litigation.  *Id.* at ¶ 24.  It is NBJC's position that Continental's course of conduct since 2007 precludes it from presently disavowing coverage to Shepro, *i.e.*, refusing to indemnify him, for any judgment that may be entered against Shepro in *Mocco v. Licata*.  And it is against this factual backdrop that NBJC initiated the present declaratory judgment action.

### A.  Procedural History

NBJC initiated this action in New Jersey Superior Court on November 4, 2021.  D.E. 1. NBJC, in the single count asserted in its state court pleading, seeks "a declaration that [Continental] is obligated to indemnify Shepro for any judgment entered against him on the claims asserted by NBJC in [*Mocco v. Licata*] because the NBJC claims are covered under the [insurance policy Continental issued to Shepro]."  D.E. 1-1 at 12.

On December 6, 2021, Continental removed the matter to federal court on the basis of diversity jurisdiction.  D.E. 1.  On December 13, 2021, Continental filed a motion to dismiss NBJC's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  D.E. 7.

On December 31, 2021, NBJC opposed Continental's motion and cross-moved for summary judgment on its declaratory judgment claim.[1]  D.E. 9.

On February 9, 2022, Chicago Title separately moved for dismissal of this action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  D.E.s 14, 15.  Chicago Title, by way of that filing, also opposes NBJC's cross-motion for summary judgment.  *See* D.E. 15-1.

## II. RELEVANT LEGAL STANDARDS AND ANALYSIS

Both Chicago Title and Continental argue that NBJC's request for a declaratory judgment is not yet ripe for adjudication by this Court.  D.E. 15-1 at 7-10; D.E. 7 at 13-16.  The Court agrees, and accordingly concludes that it presently lacks subject-matter jurisdiction over this matter.

Article III of the Constitution limits the "judicial Power" of the United States to the adjudication of "Cases" or "Controversies."  U.S. Const. art. III, § 2; *see also Peachlum v. City of New York*, 333 F.3d 429, 433 (3d Cir. 2003). ("The existence of a case and controversy is a prerequisite to all federal actions, including those for declaratory or injunctive relief.").  Courts enforce the case-or-controversy requirement through several justiciability doctrines, including ripeness, which all "'cluster about Article III.'"  *Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Engineers, Loc. Union No. 66*, 580 F.3d 185, 190 (3d Cir. 2009) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)).

The ripeness doctrine determines "whether a party has brought an action prematurely, and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine."  *Peachlum v. City of York*, 333 F.3d 429, 433 (3d

---

[1] NBJC prepared a similar motion for filing in New Jersey state court.  *See* D.E. 9 at Ex. A. Although that motion was never formally filed in Superior Court, *see* D.E. 9-3, it was served on defendants along with a copy of NBJC's state court complaint.  NBJC incorporates the arguments presented therein into its present summary judgment motion.  *See* D.E. 9 at 13.

Cir.2003) (citation omitted).  A dispute is not ripe, and therefore not justiciable, "if it rests upon contingent future events that may not occur as anticipated or indeed may not occur at all."  *Wyatt, Virgin Islands, Inc. v. Gov't of the Virgin Islands*, 385 F.3d 801, 806 (3d Cir. 2004); *see also Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405, 412-13 (3d Cir. 1992) (When "the plaintiff's action is based on a contingency, it is unlikely that the parties' interests will be sufficiently adverse to give rise to a case or controversy within the meaning of Article III.").

Here, the issue of Shepro's liability to NBJC is still unresolved.  Whether Continental may be required to indemnify Shepro for his still-unestablished liability in the underlying *Mocco v. Licata* state court action, in other words, rests upon a contingent future event, *i.e.*, a state court finding that Shepro is indeed liable to NBJC, that may not occur at all.  NBJC's request for "a declaration that [Continental] is obligated to indemnify Shepro for any judgment entered against him on the claims asserted by NBJC in [*Mocco v. Licata*,]" D.E. 1-1 at 12, which, again, is the only relief which NBJC seeks in this matter, is accordingly not yet ripe for purposes of satisfying Article III's case or controversy requirement.  *See Evanston Ins. Co. v. Layne Thomas Builders, Inc.*, 635 F. Supp. 2d 348, 353 (D. Del. 2009) ("[W]hile an underlying action is pending, the issue of indemnification is not yet a controversy between the parties, and thus, does not meet the Constitutional requirement that federal courts may only adjudicate actual cases or controversies."); *Hartford Ins. Co. of the Midwest v. Dana Transp. Inc.*, No. 16-CV-9091-KM-JBC, 2018 WL 10152321, *5 (D.N.J. May 21, 2018) ("As a general matter, courts refrain from adjudicating whether an insurer has a duty to indemnify an insured until after the insured is found liable for damages in an underlying action.") (citing *Evanston*, 635 F. Supp. 2d at 353); *Allstate Ins. Co. v. Lombardi*, No. Civ. A. 02-1250, 2003 WL 21666090 at *3 (E.D. Pa. 2003) ("[W]here it is determined that the insurer does have a duty to defend, and where the liability of the insured in the

5

underlying action has not yet been determined, the issue of indemnification cannot be addressed or resolved by the declaratory judgment court."), *aff'd*, 142 Fed. App'x. 549 (3d Cir. 2005).

In short, the Court finds that NBJC's declaratory judgment claim is not yet ripe for purposes of satisfying Article III's case or controversy requirement, and thus, that it does not presently have subject matter jurisdiction to adjudicate that claim. The question the Court must now address is whether dismissal or remand is appropriate.

NBJC, in its most recent submission, avers that "if there is not presently a justiciable case or controversy under federal law," then remand of this matter, and not outright dismissal, is the appropriate course of action. D.E. 16 at 3. The Court agrees. *See Bromwell v. Michigan Mut. Ins. Co.*, 115 F.3d 208, 214 (3d Cir. 1997) ("[W]hen a federal court has no jurisdiction of a case removed from a state court, it must remand and not dismiss on the ground of futility."); *Baccay v. Heartland Payment Sys., LLC*, No. CV1707779FLWLHG, 2019 WL 337585, at *9 (D.N.J. Jan. 28, 2019) ("Where a defendant removes a claim from state court . . . , but Article III standing (and, thus, subject matter jurisdiction) is lacking, the proper recourse is remand rather than dismissal, pursuant to 28 U.S.C. § 1447(c)."); *Katz v. Six Flags Great Adventure*, LLC, No. 18-116, 2018 WL 3831337, at *9 (D.N.J. Aug. 13, 2018) ("the Third Circuit has instructed that where subject matter jurisdiction is lacking in a removal case, the literal words of § 1447(c) – providing that removed cases 'shall' (as opposed to 'may') be remanded – require district courts to remand the case, even if remand may be futile.") (citing *Bromwell*, 115 F.3d at 214). The Court will accordingly order that this matter be remanded to New Jersey Superior Court.

### III.  CONCLUSION

For the foregoing reasons, the Court agrees with Continental and Chicago Title that NBJC's lone claim for declaratory relief fails to present a Constitutionally-adequate case or

6

controversy that is ripe for adjudication by this Court. However, insomuch as Continental and Chicago Title's respective motions to dismiss ultimately request outright dismissal of this action based upon, *inter alia*, the unripe nature of NBJC's claim, their motions are denied. This matter will instead be remanded to state court. NBJC's summary judgment motion seeking declaratory relief from this Court is also denied. An appropriate Order accompanies this Opinion.

Dated**:** October 11, 2022

*[signature: Evelyn Padin]*

Evelyn Padin, U.S.D.J.